UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

|  |  |
|---|---|
| CHRIS IRWIN, BONNIE SWINFORD, MATT JONES, RICKI DRAPER, MARK HOMER, and MARGARET ROGERS,<br><br>Plaintiffs,<br><br>vs.<br><br>TENNESSEE VALLEY AUTHORITY, TOM KILGORE (as CEO of T.V.A.), and STEVE KELLY,<br><br>Defendants. | No. 3:12-cv-35<br><br>(Campbell/Shirley) |

## ORDER

Six individuals (the Plaintiffs) allege in their complaint that the federal agency Tennessee Valley Authority (TVA) and its security officer Steve Kelly violated their First Amendment rights by issuing and carrying out a "no costume" policy that unconstitutionally restricts free speech at public TVA board meetings. The relevant events focus around the August 18, 2011 TVA board meeting.[1]

TVA filed a motion to dismiss the claims. For the reasons set forth below, TVA's

---

[1]The Plaintiffs alleged other causes of action against TVA, but they have since withdrawn those claims.

Motion to Dismiss is GRANTED IN PART AND DENIED IN PART.[2]

**FACTUAL BACKGROUND**[3]

The events that give rise to Plaintiffs' First Amendment claims culminated on August 18, 2011, when the Board of Directors of the Tennessee Valley Authority (TVA), a federal agency with headquarters in Knoxville, Tennessee, held a board meeting that was open to the public. In connection with the board meeting, the Board held a "public listening session" during which members of the public were invited to address the Board on a first-come first-served basis. Each speaker had up to three minutes to make comments.

It was at the board meeting that the Plaintiffs' First Amendment rights to free speech were allegedly violated. But before discussing the events of that day, it is necessary to discuss the events that lead up to the board meeting, for they provide important context for understanding what occurred on August 18, 2011.

---

[2]Plaintiffs have filed a motion for default judgment against Steve Kelly (Docket No. 6) and a motion for partial default judgment against TVA (Docket No. 7). The court denies both motions for the reasons set forth in the responses filed by the Defendants. (See Docket Nos. 9-10.)

[3]After the court's March 12, 2013 hearing on the TVA's motion to dismiss, Plaintiffs filed a motion for leave to amend their complaint (see Docket No. 23) to clarify and add factual allegations that had been raised in their opposition brief, which, in combination with allegations contained in Plaintiffs' original complaint, stated a claim for violation of First Amendment rights. Although the motion for leave to amend has not been fully briefed, the court must freely grant leave to amend when a case such as this one is still in the early stages of litigation. Fed. R. Civ. P. 15(a)(2). The proposed first amended complaint drops certain causes of action, deletes Mr. Kilgore's name from the list of Defendants, and clarifies factual allegations. The changes in the proposed first amended complaint do not prejudice the Defendants' ability to defend the against the lawsuit, and the proposed amendment would not be futile. Because the Plaintiffs are entitled to file their proposed amended complaint, the court considers the allegations set forth in the proposed first amended complaint to determine whether TVA's motion to dismiss should be granted.

A few weeks before the board meeting, on July 20, 2011, members of the public held a peaceful protest in Chattanooga, Tennessee, against TVA's proposed Bellefonte nuclear power plant. The TVA had recently announced its intention to revive construction of the uncompleted Bellefonte plant, on which construction began in 1974 but was never finished. At the Chattanooga protest, protestors dressed in "zombie" costumes and referred to the Bellefonte reactor as a "zombie" reactor that had "previously been killed and then resurrected." (Proposed Am. Compl. (Docket No. 23-1) ¶ 15.) They referred to the Bellefonte plant "as a corpse of a power plant . . . ." (Id. ¶ 16.) The Chattanooga protest was covered by the media, and TVA was aware of the Chattanooga protest.

On August 5, 2011, a second peaceful protest against the Bellefonte project was held, this time in Knoxville, Tennessee. Protestors again dressed as zombies and referred to the Bellefonte plant as a zombie reactor. TVA was aware of the Knoxville protest as well.

On August 16, 2011, two days before the board meeting, TVA issued a policy that imposed the following restriction on attendance at TVA board meetings:

> To help <u>ensure the safety and security</u> of all participants, <u>members of the public dressed in costume</u> will not be allowed to enter the listening session.

(Speaking Registration Information from TVA website, attached as Ex. 1 to TVA's Mem. Supp. Mot. Dismiss (Docket No. 3) (emphasis added).[4]) The court refers to this as the "No-Costume

---

[4] The court may consider the "Speaking Registration," which was available on TVA's website, without converting TVA's motion to dismiss into a motion for summary judgment. See, e.g., Nieman v. NLO, Inc., 108 F.3d 1546, 1554 (6th Cir. 1997) (noting that court may, when ruling on a Rule 12(b)(6) motion, consider not only allegations in complaint but also matters of public record). Similarly, documents referred to in the complaint (such as the TVA Board policy here) that are central to the Plaintiffs' claims may be considered as part of the pleadings when determining whether to grant a Rule 12(b)(6) motion. Weiner v. Klais & Co., Inc., 108 F.3d 86,

3

Policy."

On August 17, 2011, several of the Plaintiffs, through an organization known as United Mountain Defense, issued a press release expressing their belief that the TVA Board of Directors issued the No-Costume Policy to suppress dissent about the Bellefonte project. The press release was covered by the media, including the local NBC affiliate, which obtained comments on the No-Costume Policy from protesters and a TVA representative.

On August 18, 2011, the six individual Plaintiffs attended, or attempted to attend, the TVA board meeting and listening session. They were there to express their opposition to the Bellefonte project and the No-Costume Policy.

Four of the Plaintiffs—Chris Irwin, Ricki Draper, Margaret Rogers, and Mark Homer—came to the meeting dressed in costume. Chris Irwin wore a business suit and make-up on his face to look like a "zombie." Ricki Draper was dressed as Santa Claus. Mark Homer was dressed as Ben Franklin. And Margaret Rogers was dressed as a pirate. None of their costumes obscured their identities or created a security risk. All four were willing to provide identification and be searched for weapons before entering the TVA building. All four were turned away at the entrance by Defendant Steve Kelly, an armed security officer for the TVA, and were not allowed to attend, much less speak at, the meeting.

Two of the Plaintiffs—Matt Jones and Bonnie Swinford—attended the meeting but did not wear costumes. Ms. Swinford intended to wear a costume as a protest of the Bellefonte project, but when she learned that those dressed in costume would not be allowed to attend the

---

88-89 (6th Cir. 1997).

meeting, she chose not to arrive in costume. Both Ms. Swinford and Mr. Jones were allowed to attend and speak during their allotted three minutes.

Mr. Jones spoke first. At the end of his allotted comment time, he joked about zombies being outside, mussed up his hair, raised his hands and made a low moaning noise. Officials associated with the TVA Board ordered him to leave the premises immediately. He complied with the order, leaving the public meeting before it was over.

Ms. Swinford spoke at some point after Mr. Jones was told to leave the meeting. She was frightened and intimidated by what happened to Mr. Jones. Not knowing whether Mr. Jones had been arrested, she modified her speech so she would not be directed to leave the meeting as well. She alleges that her protected speech was chilled by the No-Costume Policy and by the fact that the TVA Board ejected Mr. Jones from the meeting based on the content and nature of the comments he made at the end of his allotted time.

Approximately five months after the August 18, 2011 board meeting, Plaintiffs filed the complaint now before the court.

## ANALYSIS

This matter comes before the court on the Defendants' Rule 12(b)(6) Motion to Dismiss, in which the Defendants assert that Plaintiffs have failed to state a claim upon which relief can be granted. They also contend that Officer Kelly is entitled to qualified immunity from the Plaintiffs' civil rights claim under 42 U.S.C. § 1983. The Plaintiffs oppose the motion to dismiss.

**TVA's Motion to Dismiss**

    1.    Standard of Review on Motion to Dismiss

When reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must view the complaint in a light most favorable to the plaintiffs, taking all well-plead allegations as true, and drawing all reasonable inferences in favor of the plaintiffs. Bassett v. Nat'l Collegiate Athletic Ass'n, 528 F.3d 426, 430 (6th Cir. 2008). The factual allegations must rise above the speculative level and state a claim that is plausible on its face. Center for Bio-Ethical Reform, Inc. v. Napolitano, 648 F.3d 365, 369 (6th Cir. 2011) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "Plausibility is a context-specific inquiry, and the allegations in the complaint must permit the court to infer more than the mere possibility of misconduct, namely that the pleader has shown entitlement to relief." Id. (citing Iqbal and Fed. R. Civ. P. 8(a)(2)) (internal quotation marks omitted).

Because the Plaintiffs' proposed first amended complaint drops all but their First Amendment causes of action (see note 3, supra), the court need not address all of the issues raised in the Defendants' Motion to Dismiss. Instead, the court will focus on what has always been the core of the Plaintiffs' case: their claims that their First Amendment rights to free speech were violated by TVA and Officer Kelly.

    2.    First Amendment Claims Against TVA

        a.    The Court has Subject Matter Jurisdiction.

The Plaintiffs have properly cited Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), as the basis for subject matter jurisdiction over their First

6

Amendment claims against federal agent Steve Kelly. But they did not allege an appropriate basis for subject matter jurisdiction over claims against the TVA itself. They may not rely on Bivens to assert jurisdiction for constitutional claims against TVA, a federal agency. FDIC v. Meyer, 510 U.S. 471, 484-85 (1994). Nevertheless, the court finds that the Plaintiffs do have a basis for subject matter jurisdiction over Plaintiffs' First Amendment claims against the TVA. In this case, the court's jurisdiction is derived from 28 U.S.C. § 1331, and the Administrative Procedure Act's general waiver of sovereign immunity for suits against the federal government seeking non-monetary relief, as set forth in 5 U.S.C. § 702. Hamdi ex rel. Hamdi v. Napolitano, 620 F.3d 615, 623 (6th Cir. 2010); United States v. City of Detroit, 329 F.3d 515, 521 (6th Cir. 2003) (en banc); Treasurer of the State of New Jersey v. U.S. Dep't of Treasury, 684 F.3d 382, 396-97 (3d Cir. 2012); Blagojevich v. Gates, 519 F.3d 370, 372 (7th Cir. 2008) (citing Bowen v. Massachusetts, 487 U.S. 879, 891-92 (1988)); Presbyterian Church (U.S.A.) v. United States, 870 F.2d 518, 523-25 (9th Cir. 1989); Trudeau v. Fed. Trade Comm'n, 384 F. Supp. 2d 281, 288-89 (D.D.C. 2005).

      b.    Plaintiffs Have Stated a Claim Against TVA for Violation of Their First Amendment Rights to Free Speech.

In its motion to dismiss, TVA contends that the Plaintiffs have not alleged expressive conduct, but even if they have, the allegations show that TVA's No-Costume Policy was a reasonable time, place and manner regulation. The court disagrees for the reasons set forth below.

      *i.*    *Plaintiffs Have Sufficiently Alleged Expressive Conduct.*

The Plaintiffs contend that the act of wearing costumes to the TVA board meeting was

7

expressive conduct entitled to First Amendment protection. Although the First Amendment does not protect pure conduct, it does protect expressive conduct (sometimes referred to as symbolic speech). Conduct may be protected if it "was sufficiently imbued with elements of communication." Spence v. Washington, 418 U.S. 405, 409 (1974), quoted in Texas v. Johnson, 491 U.S. 395, 404 (1989). "To bring a free-speech claim regarding actions rather than words, claimants must show that their conduct 'convey[s] a particularized message' and 'the likelihood [is] great that the message [will] be understood by those who view[] it.'" Blau v. Fort Thomas Pub. Sch. Dist., 401 F.3d 381, 388 (6th Cir. 2005) (alteration in original) (citing Spence and Johnson).

Plaintiffs bear the burden of demonstrating that their actions were protected by the First Amendment. Clark v. Community For Creative Non-Violence, 468 U.S. 288, 293 n.5 (1984). At this early stage of the proceedings, under the liberal pleading standards of Rule 8 of the Federal Rules of Civil Procedure, Plaintiffs have carried their burden.

> (a) The Plaintiffs' wearing of costumes conveyed a particularized message.

As the Sixth Circuit noted in Blau, "[t]he threshold [for establishing a particularized message] is not a difficult one, as 'a narrow, succinctly articulable message is not a condition of constitutional protection.'" Id. (quoting Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston, 515 U.S. 557, 569 (1995) "Otherwise, the First Amendment 'would never reach the unquestionably shielded painting of Jackson Pollock, music of Arnold Schoenberg, or Jabberwocky verse of Lewis Carroll.'" Id.

The costumed-Plaintiffs' actions conveyed two separate messages. First, they

8

emphasized public dissent over the Bellefonte project. Second, they expressed the message that the No-Costume Policy was an attempt to suppress that dissent.

Chris Irwin, by wearing a zombie costume, re-affirmed the message that was conveyed during the Chattanooga and Knoxville protests of the Bellefonte project. He intentionally associated a negative symbol (a zombie monster) with TVA's proposed completion of a partially-constructed nuclear power plant that had been otherwise abandoned years ago. Moreover, he intentionally wore a costume (not an everyday occurrence) to a formal board meeting where such action was expressly forbidden by TVA's No-Costume Policy. The act of wearing a costume to the public event where costumes were barred is somewhat akin (albeit at a lesser level of intensity) to the 1960s sit-in protest staged by African-Americans at a public library that had a "whites only" policy. See Brown v. State of Louisiana, 383 U.S. 131, 141-42 (1966) ("As this Court has repeatedly stated, [First Amendment] rights are not confined to verbal expression. They embrace appropriate types of action which certainly include the right in a peaceable and orderly manner to protest by silent and reproachful presence" in a public facility). The costume wearing was meant to be an act in defiance of the policy. The other costumed-Plaintiffs (those who were dressed as Benjamin Franklin, Santa Claus, and a pirate) were also engaged in an act of defiance protesting the No-Costume Policy, which they earlier said was issued to suppress dissent.

TVA asserts that the non-zombie costumes were nonsensical (i.e., the costumes were not associated in any way with the Bellefonte project or the earlier protests where members of the public were clad in zombie costumes). Accordingly, TVA contends, those costumes could not have conveyed any particularized message. But those particular Plaintiffs were wearing

9

costumes (again, not an everyday occurrence) to the board meeting and the unusualness of their conduct conveyed some sort of message. The nature of the message and the likelihood that the recipients would understand the message are intertwined here. Under Rule 12(b)(6), the court must make all reasonable inferences in favor of the non-movant. Because local news media reported on the No-Costume Policy, it is reasonable to infer that people in costumes were purposely acting contrary to the policy because they disagreed with it. On the other side of the same coin, the allegations support the reasonable conclusion that TVA understood that the costume-clad individuals were there to challenge the No-Costume Policy and that they were linked to the zombie protestors challenging the Bellefonte project.

If Matt Jones and Bonnie Swinford had worn costumes, the message would have been the same. But they did not try to convey their intended message precisely because TVA issued the No-Costume Policy, which kept them from articulating the message they wished to convey in the manner they wished to convey it. Indeed, Ms. Swinford curtailed her intended speech to the TVA Board by her fear of being kicked out of the meeting without a chance to verbally make her points and because she feared being arrested if she communicated in the manner she had planned.

In addition, the court notes that Matt Jones arguably engaged in pure speech when, at the end of his comment period, he made a comment about zombies outside, mussed up his hair, raised his arms, and moaned. The No-Costume Policy did not bar his statement and actions, but he was nevertheless forced to leave the TVA board meeting because of what he said and did.

The allegations sufficiently establish that each of the Plaintiffs, in some form or another, had a particularized message to convey, which was thwarted by TVA.

10

(b) The likelihood was great that members of the TVA Board and others in attendance who viewed the messages would understand it.

Context plays a big role in the analysis of this element. Spence v. State of Washington, 418 U.S. 405, 410 (1974) ("[T]he context in which a symbol is used for purposes of expression is important, for the context may give meaning to the symbol.") (citing Tinker v. Des Moines Independent Community Sch. Dist., 393 U.S. 503 (1969)). Given the events that led up to the August board meeting, the likelihood was great that TVA board members and others associated with, or in attendance at, the board meeting would have understood, and did understand, the messages.

Within a period of three weeks, five events occurred in close succession. It is reasonable to infer that they were linked. First, the Chattanooga zombie protest was held and publicized. Second, the Knoxville protest was held and publicized. Third, the TVA issued its No-Costume Policy. Fourth, some of the Plaintiffs, through an affiliated organization, issued a press release contending the No-Costume Policy was meant to suppress dissent. Fifth, some Plaintiffs and a TVA representative commented to local news media, which publicized the press release and reactions to it. At the end of that series of events, the costumed Plaintiffs were refused entry to the TVA board meeting and listening session.

In the context of these events, the costumes were identifiable symbols of protest of not only the Bellefonte project but also the No-Costume Policy. Accordingly, the court finds, based on the above allegations, that the Plaintiffs have met their burden to allege facts showing that the TVA board members understood the symbols and the messages the Plaintiffs wished to convey.

11

####### ii. The TVA No-Costume Policy On Its Face Is Not Content Neutral.

TVA contends that even if Plaintiffs engaged in constitutionally-protected conduct, the No-Costume Policy was a reasonable time, place, or manner restriction and so the Plaintiffs have not alleged a violation of their First Amendment rights.

TVA urges the court to adopt the standard of scrutiny set forth in United States v. O'Brien, 391 U.S. 367 (1968), contending that the No-Costume Policy is unrelated to free speech. In O'Brien, the United States Supreme Court noted the rule that "when 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." Id. at 376. The Court further noted that "a governmental regulation is sufficiently justified if it is [among other factors], unrelated to the suppression of free expression[.]" Id. at 377. A regulation is "unrelated to the suppression of free expression" if, on its face, it does not have the inevitable effect of abridging constitutional rights. See id. at 384-85. In other words, expressive conduct "may be forbidden or regulated . . . if the interest is unrelated to the suppression of free speech." Clark v. Community for Creative Non-Violence, 468 U.S. 288, 294 (1984) (citing O'Brien) (emphasis added).

TVA further contends that the No-Costume Policy passes constitutional muster because it is a reasonable government regulation of speech in a "designated" and "limited" public forum.

> The right to free speech is not absolute, especially when a would-be speaker seeks access to government property as a platform for his speech. The extent to which the government may regulate speech in this setting depends on the context of the speech and the government's reasons for restricting the speech.

Lowery v. Jefferson County Bd. of Educ., 586 F.3d 427, 432 (6th Cir. 2009). There is no dispute

12

that the TVA board meeting is a designated and limited public forum. See id. (holding that school board meeting was a designated and limited public forum). But the No-Costume Policy does not fulfill the requirements necessary to uphold a regulation of speech in a designated and limited public forum.

"[T]he government may regulate the time, place and manner of speech so long as the regulation is (1) 'content-neutral,' (2) 'narrowly tailored to serve a significant governmental interest' and (3) 'leave[s] open ample alternative channels for communication of the information.'" Id. (quoting Community for Creative Non-Violence, 468 U.S. at 293) (emphasis added). But TVA's No-Costume Policy is not content-neutral. A valid restriction on speech is only justified if it does not reference the content of the speech. Id. at 433. Here, the policy on its face expressly bars the wearing of costumes during TVA board meetings. It specifically refers to the Plaintiffs' proposed speech.

Based on the allegations in the complaint, the court finds that the No-Costume Policy is not a reasonable time, place, and manner restriction,[5] so TVA is not entitled to dismissal under Rule 12(b)(6).

3. Officer Kelly is Shielded from Plaintiffs' § 1983 Claim by Qualified Immunity.

The doctrine of qualified immunity provides federal and state employees "immunity from suit rather than a mere defense to liability." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). An officer is entitled to qualified immunity if his conduct "does not violate clearly established

---

[5]In its motion to dismiss, TVA limits its challenge to a discussion of the time, place, and manner restriction. Accordingly, the court does not reach the question of whether the No-Costume Policy survives any other level of scrutiny.

13

statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

The qualified immunity analysis has two prongs. Under the first prong, the court must determine whether the official violated a constitutional or statutory right. Ashcroft v. al-Kidd, ___ U.S. ___, 131 S. Ct. 2074, 2080 (2011). Under the second prong, the court determines whether the right violated was "clearly established" at the time of the violation.[6] Id. The court may choose the order in which to analyze the two prongs. Pearson v. Callahan, 555 U.S. 223, 236 (2009). Because the court has already found that the Plaintiffs have stated a claim for violation of their First Amendment rights, the court will focus on the "clearly established" prong of the analysis.

"A right is clearly established if '[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Hearring v. Sliwowski, ___ F.3d ___, 2013 WL 1223311, *3 (6th Cir. Mar. 27, 2013) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987) ) (alterations in original). The key question is whether the official "was on notice that his alleged actions were unconstitutional." Grawey v. Drury, 567 F.3d 302, 313 (6th Cir. 2009), quoted in Stoudemire v. Michigan Dep't of Corrections, 705 F.3d 560, 568 (6th Cir. 2013). "[T]he 'clearly established prong must be applied 'in light of the specific context of the case, not as a broad general proposition.'" Stoudemire, 705 F.3d at 568 (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001).) In other words, "[t]he relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a

---

[6]The burden to show that the right was clearly established rests with the Plaintiffs. Perez v. Oakland County, 466 F.3d 416, 427 (6th Cir. 2006).

14

reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202, quoted in Binay v. Bettendorf, 601 F.3d 640, 652 (6th Cir. 2010).

"The source of law that clearly establishes such a right is 'precedent from the Supreme Court, the Sixth Circuit, the district court itself, or other circuits that is directly on point." Sutton v. Metropolitan Gov't of Nashville & Davidson County, 700 F.3d 865, 877 (6th Cir. 2012) (quoting Holzemer v. City of Memphis, 621 F.3d 512, 527 (6th Cir. 2010)). The court must ask "whether these precedents 'placed the . . . constitutional question beyond debate.'" Hearring, ___ F.3d at ___, 2013 WL 1223311, *3 (quoting al-Kidd, 131 S. Ct. at 2083). "[T]here are limitations on which a court may rely on holdings in contexts other than the one being considered to demonstrate that a principle has been clearly established." Id. (internal citations and quotation marks omitted). But the court need not find a case directly on point in order to hold that the right was clearly established in the law. al-Kidd, 131 S. Ct. at 2083. Instead, "in light of pre-existing law the unlawfulness must be apparent." Anderson v. Creighton, 483 U.S. 635, 640 (1987).

Here, the court finds that the relevant case law existing at the time of the TVA board meeting did not clearly establish the First Amendment right to wear a costume to a public agency board meeting.

Although the court has found that the Plaintiffs' alleged conduct was sufficiently expressive to warrant protection under the First Amendment, that conclusion is far from apparent under the relevant case law. None of the United States Supreme Court cases, Sixth Circuit decisions, or cases in other jurisdictions address the expressiveness of wearing a costume to a public agency meeting or any set of facts that closely resembles the situation here. The court does not expect a reasonable officer to engage in a legal analysis analogizing facts in expressive

15

conduct cases. Officer Kelly was following the policy issued by his employer. Because it was not clear that such an act was expressive conduct protected by the First Amendment, Officer Kelly is entitled to qualified immunity for his actions barring the costumed-Plaintiffs from attending the board meeting. Accordingly, the court hereby DISMISSES Defendant Steve Kelly.

## CONCLUSION

For the reasons set forth above, the court **ORDERS** as follows:

1. The Plaintiffs' Motion for Court's Leave to File First Amended Complaint (Docket No. 23) is GRANTED. Plaintiffs are directed to file the First Amended Complaint as soon as practicable.

2. The Plaintiffs' Motion for Default Judgment Against Steve Kelly (Docket No. 6) is **DENIED** for the reasons set forth in note 2, supra.

3. The Plaintiffs' Motion for Default Judgment Against Tennessee Valley Authority (Docket No. 7) is **DENIED** for the reasons set forth in note 2, supra.

4. The Defendants' Motion to Dismiss (Docket No. 2) is **GRANTED IN PART AND DENIED IN PART** as follows:

   a. Tom Kilgore, who was named in his official capacity as CEO of TVA in the original complaint but was removed from the list of Defendants in Plaintiffs' now-approved First Amended Complaint, is hereby **DISMISSED** from the case.

   b. The Plaintiffs' claim under the Sunshine Act (5 U.S.C. § 552b) is now moot, so it is hereby **DISMISSED**.

   c. The Plaintiffs' claim for punitive damages is now moot, so it is hereby **DISMISSED**.

16

        d.      Defendant Steve Kelly is shielded from suit under 42 U.S.C. § 1983 because he has qualified immunity. Accordingly, the court **DISMISSES** Steve Kelly from this case.

        e.      Under the pleading standards of Rule 8 of the Federal Rules of Civil Procedure, the Plaintiffs state a claim for relief against Defendant Tennessee Valley Authority for violation of the Plaintiffs' First Amendment rights. Accordingly, the motion to dismiss the First Amendment claims against TVA under Rule 12(b)(6) is **DENIED**.

SO ORDERED this 17th day of April, 2013.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
U.S. District Court Judge

17

Case 3:12-cv-00035-TC-CCS   Document 24   Filed 04/17/13   Page 17 of 17   PageID #: 248